UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

Plaintiff,

v.

JOHN DAVID MCAFEE and
JIMMY GALE WATSON, JR.,

Defendants.

Case No. 21-cv-1919 (JGK)

ECF Case

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT JIMMY GALE WATSON

### I. INTRODUCTION

On March 5, 2021, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants John David McAfee ("McAfee") and Jimmy Gale Watson ("Watson") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2021).

### II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Watson without a trial on the merits or any further judicial proceedings, Watson:

1. Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Jimmy Gale Watson ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5. Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7. Waives:

   (a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2021), relating to, or arising from, this action;

   (b) Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–53, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

   (c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

   (d) Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Watson now or in the future resides outside the jurisdiction of this Court;

9. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party. Watson shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11. Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which he admits;

12. Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

13. Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a: statutory disqualification proceeding; proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Order;

14. Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 44 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

15. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Watson in any other proceeding.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

A. **Findings of Fact**

**The Parties to this Consent Order**

16. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

17. Defendant **Jimmy Gale Watson Jr.** is a natural person who currently resides in Texas. Watson has never been registered with the Commission.

**Overview of Virtual Currencies**

18. A virtual currency is a type of digital asset defined here as a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value, but does not have legal tender status in any jurisdiction. Bitcoin, ether, verge, dogecoin, reddcoin,

and other virtual currencies are distinct from "real" currencies, which are the coin and paper money of the United States or another country that are designated as legal tender, circulate, and are customarily used and accepted as a medium of exchange in the country of issuance.

19.  Digital assets, such as bitcoin, ether, and other virtual currencies such as verge, dogecoin, and reddcoin, identified in the Complaint are encompassed by the definition of "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9).

**Defendants' Scheme to Manipulate**

20.  From at least in or around December 2017 through at least in or around February 2018 (the "Relevant Period"), Watson was employed by and acted in concert with co-Defendant John David McAfee ("McAfee") and others while engaged in a digital asset "pump and dump" manipulative and deceptive scheme in which Defendants endorsed several digital assets through social media distributed nation- and worldwide, for the purpose of inducing investors, including those in New York, New York, into entering into contracts of sale of virtual currency, including bitcoin, verge, dogecoin, and reddcoin, among others, through electronic web-based virtual currency trading platforms based in various states and countries, thereby increasing short-term demand and higher prices for the digital assets that Defendants had secretly purchased shortly before.

21.  As part of the scheme, Watson assisted McAfee with strategically selecting digital assets that would be suitable for the pump-and-dump scheme.

22.  ***Dogecoin Strategy.*** For example, on or around January 3, 2018, Watson assisted McAfee by strategizing as to the next digital asset to be the vehicle of the pump-and-dump scheme. Watson recommended dogecoin. Watson also recommended that McAfee wait for dogecoin to increase in price after their building of a position before tweeting out the promotion.

Watson predicted to McAfee that the market price of dogecoin would likely "skyrocket" almost immediately after McAfee's tweet, just as other digital assets touted by McAfee had done.

23. ***Dogecoin Build.*** Watson built a position in dogecoin, spending approximately 4.1 btc to purchase approximately 6.7 million dogecoin.

24. ***Dogecoin Pump.*** On or around January 8, 2018, or about five days after Watson recommended to McAfee dogecoin as the next coin to promote, McAfee's Twitter account issued a tweet endorsing dogecoin as his "Coin of the Week." The tout did not disclose Defendants' financial interest in dogecoin, their intent to dump dogecoin as the price spiked after being touted, or the fact that McAfee was not endorsing dogecoin without bias as a long-term value for investors.

25. ***Dogecoin Dump.*** Almost immediately after McAfee's tout by tweet of dogecoin, Watson sold his dogecoin position for a net profit of more than 2.9 btc.

26. During the Relevant Period, McAfee and Watson, directly and through others, engaged in similar iterations of the pump-and-dump scheme with respect to other digital assets as well.

**B.  Conclusions of Law**

<u>Jurisdiction and Venue</u>

27. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or

is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

28. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the acts and practices in violation of the Act occurred within this District.

**Fraud and Manipulation by Deceptive Device or Contrivance**
**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a),**
**17 C.F.R. § 180.1(a) (2021)**

29. Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), makes it unlawful for any person, directly or indirectly, to:

> use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after [July 21, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

30. Commission Regulation 180.1(a), 17 C.F.R. § 180.1(a), provides in part:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:
>
> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
>
> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

31. Watson willfully aided, abetted, counseled and worked in combination and in concert with McAfee in making or attempting to make untrue or misleading statements of

material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading. Therefore, pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Watson is liable as a principal for violations of Section 6(c)(1) of the Act and Regulation 180.1.

## Price Manipulation
### Violations of Sections 6(c)(3) and 9(a)(2) of the Act, 7 U.S.C. §§ 9(3), 13(a)(2), and Regulation 180.2, 17 C.F.R. § 180.2 (2021)

32. Section 6(c)(3) of the Act, 7 U.S.C. § 9(3) makes it unlawful for "any person, directly or indirectly, to manipulate or attempt to manipulate the price of any swap, or of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."

33. Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), makes it unlawful for "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or any swap . . . ."

34. Commission Regulation 180.2, 17 C.F.R. § 180.2, makes it "unlawful for any person, directly or indirectly, to manipulate or attempt to manipulate the price of any swap, or of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."

35. Watson willfully aided, abetted, counseled and worked in combination and in concert with McAfee in attempting to manipulate the price of a commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity. Therefore, pursuant to Section 13(a) of the Act, 7 U.S.C. § 13c(a), Watson is liable as a principal for violations of Section 6(c)(1) of the Act and Regulation 180.1.

36. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Watson will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

37. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Watson is permanently restrained, enjoined and prohibited from directly or indirectly:

   a. in connection with contracts of sale of commodities in interstate commerce, making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading, such as misleadingly characterizing digital asset recommendations as based on substantial research into long-term value, rather than simply digital assets susceptible to the pump-and-dump scheme; misleadingly issuing purportedly unbiased digital asset touts by tweet while disclaiming financial interest in a short-term price rise; and misrepresenting or concealing the true motive of Defendants' digital asset touts by tweet, namely, to contribute to a short-term price rise and secretly trade out of the position into that price rise, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a);

   b. manipulating or attempting to manipulate the price of a commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity in violation of Sections 6(c)(3) and 9(a)(2) of the Act and Regulation 180.2.

38. Watson is also permanently restrained, enjoined and prohibited from directly or indirectly:

   a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

   b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021), for his own personal account or for any account in which he has a direct or indirect interest;

    c. Having any commodity interests traded on his behalf;

    d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and/or

    g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

## V. DISGORGEMENT AND CIVIL MONETARY PENALTY

### A. Disgorgement

39. Watson shall pay disgorgement in the amount of One Hundred Forty Four Thousand Seven Hundred Thirty Six Dollars ($144,736) ("Disgorgement Obligation"), representing the gains received in connection with such violations, within thirty days of the date of the entry of this Consent Order. If the Disgorgement Obligation is not paid in full within thirty days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the Disgorgement Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

40. Watson shall pay his Disgorgement Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment

shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> Tonia.King@faa.gov

If payment by electronic funds transfer is chosen, Watson shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Watson shall accompany payment of the Disgorgement Obligation with a cover letter that identifies Watson and the name and docket number of this proceeding. Watson shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

### B. Civil Monetary Penalty

41. Watson shall pay a civil monetary penalty in the amount of One Hundred Forty Four Thousand Seven Hundred Thirty Six Dollars ($144,736) ("CMP Obligation"), within thirty days of the date of the entry of this Consent Order. If the CMP Obligation is not paid in full within thirty days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

42. Watson shall pay his CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank

money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> Tonia.King@faa.gov

If payment by electronic funds transfer is chosen, Watson shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Watson shall accompany payment of the CMP Obligation with a cover letter that identifies Watson and the name and docket number of this proceeding. Watson shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

### C.     Provisions Related to Monetary Sanctions

43.    Partial Satisfaction: Acceptance by the Commission of any partial payment of Watson's Disgorgement Obligation, or CMP Obligation shall not be deemed a waiver his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

44. Until such time as Watson satisfies in full his Disgorgement Obligation and CMP Obligation under this Consent Order, upon the commencement by or against Watson of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of Watson's debts, all notices to creditors required to be furnished to the Commission under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

45. Notice: All notices required to be given by any provision in this Consent Order, except as set forth in paragraph 44, above shall be sent certified mail, return receipt requested, as follows:

> Notice to Commission:
> Manal M. Sultan, Deputy Director
> Division of Enforcement
> Commodity Futures Trading Commission
> Ted Weiss Federal Building
> 290 Broadway, Suite 600
> New York, NY 10007
>
> Notice to Defendant Watson:
> Jimmy Gale Watson
> c/o Arnold Spencer, Esq.
> Spencer & Associates
> 5956 Sherry Lane, Suite 2000
> Dallas, Texas 75225

All such notices to the Commission shall reference the name and docket number of this action.

46. Change of Address/Phone: Until such time as Watson satisfies in full his Disgorgement Obligation, and CMP Obligation as set forth in this Consent Order, Watson shall

provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

47.     Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

48.     Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

49.     Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

50.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Watson to modify or for relief from the terms of this Consent Order.

51.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Watson, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by

personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Watson.

52. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

53. Contempt: Watson understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

54. Agreements and Undertakings: Watson shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Jimmy Gale Watson* forthwith and without further notice.

IT IS SO ORDERED on this __14__ day of ____July____, 2022.

_____
UNITED STATES DISTRICT JUDGE

*The Clerk is directed to close this case.*
*So ordered.*
*7/14/22*
*John G. Koeltl*
*U.S.D.J.*

CONSENTED TO AND APPROVED BY:

_____
JIMMY GALE WATSON
Date: June 13th 2022

_____
David W. Oakland
Commodity Futures Trading Commission
Ted Weiss Federal Building
290 Broadway, Suite 600
(646) 746-9769
(6460 746-9940 (facsimile)
doakland@cftc.gov

Dated _____7/14/22_____